# EXHIBIT K

# SPILMAN THOMAS & BATTLE, PLLC

### ATTORNEYS AT LAW

Direct Dial: 304.340.3877
E-mail: kcarr@spilmanlaw.com

November 19, 2009

**Via Facsimile 412-391-1789 and**
**Overnight Mail/Federal Express**

John J. Morgan, Esquire
1034 Fifth Avenue, Suite 300
Pittsburgh, Pennsylvania 15219

Re:   Jeffrey Varner Arbitration Matter
FMC Case No. 090619-03029-1

Dear Mr. Morgan:

Thank you on behalf of both parties for agreeing to mediate this matter. I have enclosed the original and one copy of "Mylan Pharmaceuticals, Inc.'s Motion to Reopen the Record and Accept Evidence and/or to Take Arbitral Notice of Evidence" with attachments. It is my understanding that you will send the enclosed copy of the same to:

Ernest B. Orsatti, Esquire
Jubelirer, Pass & Intrieri, PC
219 Fort Pitt Boulevard,
Pittsburgh, PA 15222.

I appreciate your assistance in this matter. If you have any questions or require any additional information, please do not hesitate contact me.

Very truly yours,

Kevin L. Carr

KLC/rcc 1882610
Enclosures
cc:  Ernest B. Orsatti, Esquire (w/o Enclosures)

Spilman Center  |  300 Kanawha Boulevard, East  |  Post Office Box 273  |  Charleston, West Virginia  25321-0273
www.spilmanlaw.com  |  304.340.3800  |  304.340.3801 fax

West Virginia      North Carolina      Pennsylvania      Virginia

**In the matter of the Arbitration between
Mylan Pharmaceuticals, Inc. and
United Steelworkers Union–
USW, Local 8-957 - AFL - CIO**

## MYLAN PHARMACEUTICALS, INC.'s MOTION TO REOPEN THE RECORD AND ACCEPT EVIDENCE AND/OR TO TAKE ARBITRAL NOTICE OF EVIDENCE

Mylan Pharmaceuticals, Inc. ("Mylan") respectfully moves this Arbitrator to Reopen the Record in this matter and accept evidence relating to recent and relevant misconduct by the grievant Jeffrey Varner ("Mr. Varner"). Succinctly, since the hearing, Mr. Varner has again been found guilty of contempt for making threats to his ex-wife (directly and through his children). The Guardian ad Litem for Mr. Varner's minor children has filed a motion for emergency relief based on Mr. Varner acting in a threatening manner and making more threats of violence, and the judge has granted the Guardian ad Litem's motion. On November 16, 2009, the Court found that "there is probable cause that the existing conditions will result in immediate and irreparable injury, loss and damage to the infant children before [Mr. Varner] or his attorney can be heard in opposition." As a result, it was ordered that "any and all contact between the Respondent, Jeffrey Varner and the minor children of the parties is prohibited, including but not limited to face to face, telephonic, texting, email through agents or through the school."

This evidence directly contradicts the Union's portrayal of Mr. Varner as a man who "made some unfortunate statements on the telephone out of frustration and later *technically* violated a court order by having contact with his wife in violation of that court order." It further undermines Mr. Varner's sworn testimony that his violation of the terms of his probation was a mere "technicality," rather than, as Mylan believed and now knows, was a result of continued threats of death and violence by Mr. Varner; the evidence demonstrates the level of immorality and indecency of Mr. Varner's conduct. In support of this Motion, Mylan states as follows:

1.    In the Union's post-arbitration brief, it referenced information that was not in the record and asked that this Arbitrator take arbitral notice of the same.  See Union Brief, pp. 7-8.

2.    While the substance of the extraneous information offered by the Union was (literally) nothing more than an awkward, sophomoric and wholly irrelevant *tu coque* argument (e.g., "[b]efore Mylan decides to pass judgment on the morality of the private lives of its employees, it should get its own house in order"), the Union nonetheless established the procedural precedent in this case supporting this Arbitrator's receipt of evidence that was not introduced during the hearing.

3.    Based on this precedent created by the Union, this Arbitrator should reopen the record, receive the legal pleadings attached hereto as Exhibits A-C, and take arbitral notice of the same.

4.    Unlike the irrelevant extraneous information offered by the Union, the evidence hereby presented by Mylan is squarely on point with disputed issues and strongly supports Mylan's position that it had very good and very ample cause to discharge Mr. Varner.

5.    As set forth in Mylan's initial brief, Mr. Varner:  1) had a history of dishonesty regarding absences from work; 2) was on the brink of termination for attendance-related issues under a final written warning; and 3) falsified a claim for short term disability (STD) in order to cover up his otherwise unexcused time off from his employer, while he was serving time in jail for immoral and indecent acts.

6.    Mr. Varner's criminal behavior began on October 4, 2008 when Mr. Varner's wife filed a complaint against Mr. Varner for placing threatening telephone calls to her. (Warrant for Arrest, Co. Ex. 1).  Mrs. Varner recorded the calls in which Mr. Varner threatened that he was going to "shoot her in the heart . . ." (Tr. pp. 31, 58).  Based upon this recorded phone call, a warrant was issued and Mr. Varner was arrested on October 27, 2008. (Warrant for

Arrest, Co. Ex. 1).  After a December 5, 2008 pre-trial conference, Mr. Varner was scheduled for

a February 4, 2009 criminal hearing.  (Notice to Appear, Co. Ex. 7).

       7.     On January 31, 2009, knowing that he needed time off to attend his criminal court

hearing, Mr. Varner met with Mylan employees Ms. Kelli Neville-Smith, Senior HR

Representative, and Aleisa Petracca, Director of Employee Relations.  (Tr. pp. 63, 84).  In this

meeting, Mr. Varner stated that he needed to take time off on February 4, 2009 to attend a

"family court hearing regarding child custody issues."  (Tr. p. 64).  At no time during his request

for leave did Mr. Varner inform Mylan that he was actually going to attend his criminal court

hearing on February 4, 2009.  (Tr. p. 65).  After deceiving Mylan's HR Department about his

reasons for taking leave on February 4, 2009, Mr. Varner took a vacation day on February 4,

2009.  (Tr. p. 146).

       8.     At Mr. Varner's February 4, 2009 criminal court hearing, Mr. Varner pleaded no

contest to the charge of making threatening phone calls to his wife.  (Warrant for Arrest, Co. Ex.

1).  After hearing the recording in which Mr. Varner told his wife he was going to "shoot her in

the heart . . .", Magistrate Gorby, of the Magistrate Court of Harrison County, West Virginia,

sentenced Mr. Varner to thirty days in jail, suspended for one year, and unsupervised probation

with a condition that Mr. Varner have no future contact with his wife.  (Warrant for Arrest, Co.

Ex. 1).

       9.     On March 17, 2009, after Mr. Varner repeatedly violated his unsupervised

probation by continuing to contact his wife and telling her things such as "you will not make it to

the final divorce hearing . . .," the Assistant Prosecuting Attorney for Harrison County filed a

Motion to Revoke Probation and Impose Sentence.  (Motion to Revoke, Co. Ex. 2).  That very

same day, Magistrate Gorby scheduled an April 6, 2009 hearing on the Motion.  (Notice to

Appear, Co. Ex. 8).

3

10.    The April 6, 2009 hearing was scheduled for 3:00 p.m., when Mr. Varner was supposed to be at work at Mylan. (Notice to Appear, Co. Ex. 8). Knowing that he could not miss any more work because he was working under a final warning for absenteeism, Mr. Varner filed a motion to continue the hearing. (Motion to Continue, Co. Ex. 3). In his motion, Mr. Varner stated that he needed the hearing rescheduled because Mylan would not allow him the time off to attend the hearing. (Motion to Continue, Co. Ex. 3). On March 30, 2009, Magistrate Gorby denied Mr. Varner's Motion to Continue and notified Mr. Varner of this decision. (Tr. pp. 26, 41, 166).

11.    After his motion to continue was denied, Mr. Varner learned from his criminal defense attorney that he may be sentenced to serve time in jail. (Tr. pp. 53-4). In fear of being fired from Mylan for absenteeism, Mr. Varner left a voicemail message for Ms. Neville-Smith that stated he was going to contact The Hartford to request leave for his allegedly re-injured elbow.[1] (Tr. pp. 67-8). Mr. Varner later followed this up by meeting in person with Ms. Neville-Smith. (Tr. pp. 67-8). At no point did Mr. Varner tell Ms. Neville-Smith he had a criminal hearing scheduled on April 6, 2009 or that he may be serving jail time in April 2009. (Tr. p. 78).

12.    Mr. Varner then contacted The Hartford and requested FMLA for three weeks beginning March 31, 2009. (FMLA Denial Letter, Co. Ex. 13). This leave period would have covered Mr. Varner's criminal hearing and possible jail time. However, The Hartford denied Mr. Varner's claim for FMLA because Mr. Varner did not work enough hours in 2008 to be eligible in 2009 for FMLA. (FMLA Denial Letter, Co. Ex. 13).

13.    Now feeling the pressure of needing time off to attend his criminal hearing and to serve his possible criminal sentence, Mr. Varner filed a claim for STD for hair restoration surgery that he scheduled for April 7, 2009. (Tr. pp. 101-04). The Hartford approved Mr.

---

[1] Mr. Varner was previously on STD for his elbow in January 2009. (Tr. pp. 67).

4

Varner's claim for STD based on hair restoration (not an elbow injury or a hip cyst) and preliminary approved Mr. Varner's benefits from March 31, 2009 through April 7, 2009. (STD Approval Letter, Co. Ex. 4). This time period allowed Mr. Varner to attend his criminal hearing and receive pay and benefits from Mylan, while deceiving Mylan of his true reasons for missing work.

14.     At Mr. Varner's criminal hearing on April 6, 2009, Magistrate Gorby granted the Assistant Prosecutor's Motion to Revoke Probation and Impose Sentence and sentenced Mr. Varner to five days in jail. (Jail Commitment Order, Co. Ex. 9). Magistrate Gorby then allowed Mr. Varner to pick which five days he wanted to serve the jail time. (Tr. pp. 28, 46-8). Desiring to maintain his hair restoration surgery appointment scheduled for April 7, 2009 in order to continue to receive his STD, Mr. Varner requested that Magistrate Gorby schedule his first two days in jail to begin April 8, 2009. (Tr. pp. 99-100, 199).

15.     Mr. Varner served his jail time – all the while out on STD for his hair plug surgery, despite telling the Hartford one reason and Mylan at least two different reasons – and then returned to work. Mylan then became aware of Mr. Varner's conduct and his pattern of deceit.

16.     On May 1, 2009, after Mylan had completed a thorough investigation into the reasons why Mr. Varner had been on STD from March 31, 2009 until April 27, 2009, Mylan discharged Mr. Varner as a result of three violations of the Mylan Company Code of Conduct:

1. Group IV, Rule 12, Acts of dishonesty
2. Group IV, Rule 1, Falsification of any records, reports, accident or insurance claims, medical excuses, etc.
3. Group IV, Rule 8, Immoral or indecent conduct

(Termination Letter, Co. Ex. 11).

17.     The evidence offered by Mylan with this Motion relates to the Rule 8 violation (Immoral or Indecent Conduct) and also directly contradicts Mr. Varner's sworn testimony thereby casting a shadow of doubt upon the credibility of all of Mr. Varner's testimony in this matter.

18.     Arbitrators have consistently ruled that "[o]ff-duty conduct may be subject to Employer discipline if the Employer demonstrates a connection or nexus between the misconduct and the Employer's legitimate business interests." Thyssenkrupp Budd Co., 121 LA 164, 167 (Goldberg, 2005).    An Employer's decision to discharge an employee for the employee's off- duty conduct is justified when the employee's "behavior harms [the] Company's reputation or product. . ." W.E. Caldwell Co., 28 LA 434, 436-37 (Bard, 1987).  Finally, an Employer may have "just cause" to terminate an employee for off-duty conduct when the employee has reason to know that his conduct is so obviously wrong that his Employer may discharge him for the wrongful conduct.  Westvaco Corp., 95 LA 169, 172 (Abrams, 1990).

19.     During the hearing, everyone conceded that Mr. Varner's initial conduct (that resulted in his conviction), without varnish, were telephonic death threats.   But during the hearing, Mr. Varner testified that his first motion for contempt resulted from a mere technicality (i.e., that he simply called, but did not threaten, his wife).  He also denied making any further threats of any kind to his wife.

20.     In its brief, the Union perpetuated this myth, arguing:

> "Mr. Varner's conduct cannot possibly be construed as "immoral or indecent conduct" in the mind of any normal human being.  He is a man who went through a very difficult custody dispute who let his emotions get away from him.  He made some unfortunate statements on the telephone out of frustration and later technically violated a court order by having contact with his wife in violation of that order."

6

21.    Since the hearing, the Court has again found Mr. Varner in contempt of that order – again for threatening his wife – and has sentenced him to serve more time in jail.   The Company respectfully suggests a "normal human being" (to use the Union's parlance) might become more skeptical of Mr. Varner's and the Union's "innocent, one-time, moral and decent conduct" defense upon consideration of the recently discovered evidence submitted herewith and described below.

22.    The Guardian ad Litem, a third-party to this dispute, has sought and obtained an Emergency Order prohibiting all contact of any kind between Mr. Varner and his children, through whom Mr. Varner made more vile and unfathomable threats to his ex-wife.

23.    In her sworn motion, the Guardian ad Litem confirmed that Mr. Varner "was acting in a threatening manner including making threats against the Mother of the children, Mary Varner and others involved with this litigation, not including the Guardian ad Litem, advising the children of the same causing the children much distress and otherwise acting in a manner that was contrary to the best interest of the children."  (See Exhibit A.)

24.    The Guardian ad Litem further averred that she "was advised that the children are aware of the threats and are concerned for their safety and safety of their Mother."

25.    The Guardian ad Litem investigated the matter and reviewed tape recordings of additional conversations with Mr. Varner.   Based on her investigation, she additionally concluded and swore that "Mr. Varner has been exhibiting erratic behavior which includes . . . . acting in a threatening manner" and "engaging in bizarre and threatening behavior with others not involved in this case, but potential witnesses."  (See Exhibit A.)

26.    The remainder of the conduct described by the Guardian ad Litem is not only revolting, it proves that Mr. Varner lied about, among other things, the fact that he had made no further threats to his wife and the fact that his first contempt finding was a mere "technicality."

7

27.     Mr. Varner's ex-wife, through her legal counsel, responded to the Guardian ad Litem's motion and confirmed that her children had informed their counselors that Mr. Varner threatened to kill her and stated that, "she will be dead in two weeks" and "I will slice her hands off." (See Exhibit B.)

28.     Carefully weighing all of this, the Court granted the Guardian ad Litem's motion. (See Exhibit C.)

29.     Considering all of this information, a "normal human being" can only conclude that Mr. Varner's initial conduct (conduct which he has not in any way curbed) was immoral and indecent.  A "normal human being" can only conclude that Mr. Varner lied to this Arbitrator under oath when he denied making any further threats to his wife.  A "normal human being" ought not accept  Mr. Varner's and the Union's position that Mr. Varner's sole transgression consisted of  a minor, emotion-driven faux pas.  A "normal human being" ought not accept Mr. Varner's several, conflicting versions of the truth and, as he would have us believe, string of coincidences leading up to his taking STD leave for goodness knows what condition while he was in jail.

30.     Although the Union rather flippantly suggests Mylan employs an in-house "Ayatollah," it does not take a high-ranking religious leader to perceive Mr. Varner's character or the direct and justifiable nexus between his persistent indecency and his termination.   Mylan viewed the evidence it gathered through the appropriate lens and properly determined that Mr. Varner had been utterly dishonest regarding the reasons for this leave of absence, that he deceived both Mylan and the Hartford with respect to the elbow-cyst-hair problem(s) allegedly necessitating his leave, that he was dishonest with Mylan during its investigation, and that his conduct was (and continues to be) both immoral and indecent.

31.     Mylan's decision was sound and supported by just cause.  The grievance should be denied.

WHEREFORE, for the reasons set forth above and for such other and further reasons as may be apparent to the Arbitrator, Mylan Pharmaceuticals, Inc. respectfully moves this Arbitrator to Reopen the Record in this matter and accept and take arbitral notice of the evidence relating to recent and relevant misconduct by the grievant Jeffrey Varner ("Mr. Varner").  And Mylan again requests that the instant grievance be denied in all respects.

**MYLAN PHARMACEUTICALS, INC.**

By Spilman Thomas & Battle, PLLC

Kevin L. Carr (WV State Bar # 6872)
Patrick R. Barry
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East
Charleston, West Virginia  25301
304.340.3800

9

IN THE FAMILY COURT OF HARRISON COUNTY, WEST VIRGINIA

IN RE THE MARRIAGE OF MARY VARNER AND JEFFREY VARNER

CIVIL ACTION NO.: 08-D-291

MOTION OF THE GUARDIAN AD LITEM FOR EXPARTE EMERGENCY RELIEF

Comes now the Guardian ad Litem for the minor children and moves this Court for ex parte emergency relief as follows:

1. The Guardian ad Litem had reviewed tape recordings of conversations with the minor children earlier in her investigations which showed clear manipulation of the children and attempts to alienate the children against their Mother, Mary Varner;

2. That the Guardian ad Litem met with the Mr. Varner, the Father of the minor children, and spoke with him regarding the inappropriateness of these telephone calls and his relationship with the children;

3. That the Father, Jeffrey Varner, acknowledged the inappropriateness of his actions and agreed to cease and desist any further attempts to alienate the children from Mary Varner;

4. That the Guardian ad Litem suggested that should he have any confusion about what is inappropriate, he should communicate with the Guardian ad Litem or the Counselor for the children;

5. That the Guardian ad Litem was advised that the telephone communications between Mr. Varner and the children were much improved;

6. That earlier this week, the Guardian ad Litem received information that the Father of the minor children, Jeffrey Varner, was acting in a threatening manner including making threats against the Mother of the children, Mary Varner and others involved with this



litigation, not including the Guardian ad Litem, advising the children of the same causing the children much distress and otherwise acting in a manner that was contrary to the best interest of the children;

7. That the Guardian ad Litem was advised that the children are aware of the threats and are concerned for their safety and safety of their Mother;

8. That the Guardian ad Litem then reviewed and investigated through independent parties not involved with the litigation and tape recordings of the telephonic communications between the children and Mr. Varner the allegations she had received;

9. That based upon this investigation, Mr. Varner has been exhibiting erratic behavior which includes constant inappropriate statements to the children that clearly is intended to alienate the children from their Mother and acting in a threatening manner;

10. That further investigation has revealed that Mr. Varner has been engaging in bizarre and threatening behavior with others not involved in this case, but potential witnesses;

11. That the Guardian ad Litem was forced to leave town prior to concluding her investigation on the allegations, but based upon the impartial evidence reviewed by the Guardian without reliance on the information from the Mother, Mary Varner, the Guardian requests that ALL contact between the minor children and Mr. Varner cease immediately pending the hearing scheduled before this Court in two weeks;

12. That the phone contact between Mr. Varner and the children is clearly harmful to the children and contrary to their best interest;

13. Mr. Varner is placing the children in an inappropriate position by advising the children that they need to ignore their Mother, tell their Mother to shut up, he is the boss not her, as well as statements about kicking her on her ass and breaking things in the home;

14. These statements are constant during the communications with the children;

15. Although the Guardian has not substantiated a death threat on Ms. Varner, as was reported to the Guardian, her investigation is not yet complete. However, definite support for behavior that is clearly contrary to the best interest of the children has been supported;

16. A further neutral witness who has been present when Mr. Varner was berating the children in an inappropriate manner, is scared as a result of any further assistance with the Guardian ad Litem, believing that Mr. Varner will "get even" and reported fear for her physical safety;

17. That the Guardian ad Litem will complete her investigation and report to the Court any update that is available, but at this time, the Guardian believes it is absolutely necessary that all contact with Mr. Varner cease until her investigation into these issues is complete in order to protect the children until the hearing scheduled in this matter.

18. That based upon neutral witnesses and the ongoing communications between the Father and the minor children, it is the Guardians concern that harm will come to the children if continued contact between the Father and the minor children is permitted prior to the hearing and the Guardian ad Litem completing her investigation;

19. That the Father has exhibited a desire to manipulate the children, which could cause irreparable harm based upon the severity of the allegations and the information obtained by the Guardian ad Litem;

20. That the Guardian ad Litem is concerned that if the Father is given notice of this motion, he will take actions that will cause irreparable harm to the children;

Wherefore, the Guardian ad Litem respectfully requests that this Court enter an ex parte emergency order immediately suspending all contact between the Father, Jeffrey Varner and the minor children, that he be prohibited from making any attempts to contact the children through agents, school or any other source until the guardian can compete her investigation and for such further specific and general relief as this Court deems just in the premises.

Respectfully submitted by,

Daya Masada Wright, Esq. on behalf of
SHANNON R. THOMAS, ESQUIRE
139 MAIN AVENUE
WESTON, WV 26452
304-269-0370
GUARDIAN AD LITEM FOR THE MINOR CHILDREN

## VERIFICATION

STATE OF WEST VIRGINIA
COUNTY OF UPSHUR, TO WIT:

I, Daya Masada Wright, on behalf of Shannon R. Thomas, the Guardian ad Litem herein,

who being first duly sworn, says that the facts and allegations contained in the Motion are true,

except so far as they are therein stated to be upon information, and that so far as they are therein

stated to be upon information, she believes them to be true.



Daya Masada Wright, on behalf of Shannon R. Thomas

Taken, subscribed to and sworn before me on this 6th day of November, 2009.

Heather Currey
Notary Public

My commission expires: May 16, 2017

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
HEATHER CURRY
LAW OFFICE OF DAYA MASADA WRIGHT
12 NORTH KANAWHA STREET
BUCKHANNON, WV 26201
My commission expires May 16, 2017

# IN THE FAMILY COURT OF HARRISON COUNTY, WEST VIRGINIA

**In Re the Marriage of:**
**MARY VARNER,**

       **Petitioner,**

**and**                                 **CIVIL ACTION NO. 08-D-291-4**

**JEFFREY D. VARNER,**

       **Respondent.**

## PETITIONER'S RESPONSE TO THE GUARDIAN AD LITEM'S *EX PARTE* MOTION AND COUNTER- PETITION FOR CONTEMPT AND FOR SANCTIONS

Comes now petitioner, Mary Varner, by and through counsel, Debra V. Chafin, and for her response to the Guardian ad Litem's Motion for *Ex Parte* Emergency Relief respectfully asserts the following:

1. Petitioner admits the allegations in paragraphs 1 through 20 of the Ex Parte Motion for Emergency Relief in that although the motion refers to specific occurrences and conversations between the Guardian *ad Litem* and third parties the petitioner has no direct knowledge of, but the events, behaviors, conversations and concerns expressed therein are consistent with the types of threats and communications petitioner has received throughout the course of this litigation.  The children have expressed through counselors that their father has threatened to kill their mother and have used descriptive remarks that could only be attributable to respondent such as, "she will be dead in two weeks" and "I will slice her hands off."  The respondent's former threats to petitioner, some of which are part of the Court's file, to "drag this out", "bury you in debt", that the petitioner would "never be divorced, you won't live that long" and "this will not be over," have come to pass as has been recently evidenced by respondent's filing of an



appeal of the Divorce Decree that was entered, the respondent's non-payment of over $40,000.00 due and owing to the petitioner by prior Orders of this Honorable Court, respondent's repeated violations of the Court's Temporary Emergency Protective Order as well as his probation revocation concerning his repeated contact with petitioner despite the criminal charges placed against him for doing so, verifies that respondent's past threats have come to pass and there is cause for great concern. This Honorable Court issued a permanent restraining order on October 2, 2009, wherein the respondent is barred from "...harassing, stalking, threatening or otherwise intimidating the petitioner or the minor children...." The events as set forth in the Guardian ad Litem's motion, together with recent revelations by the minor children, deem that the respondent is in direct violation of that Order.

**WHEREFORE,** the petitioner respectfully prays that the *Ex Parte* Order entered on November 6, 2009, remain in full force and effect until the respondent can submit to a full psychological evaluation, for attorney fees and costs to prosecute this matter and for any other relief this Court may deem just and appropriate.

## COUNTER-PETITION FOR CONTEMPT

1. By Order entered June 8, 2009, the Court ordered as follows:

    "Neither party shall make disparaging remarks about the other party..."

2. Despite the numerous times that respondent has been warned, he continues to make disparaging comments about the petitioner to the minor children and has increased the seriousness of the comments by telling the minor children that he is going to kill their mother and others who have "kept" [the children] from him.

3. This Honorable Court found at the April 14, 2009, hearing that the respondent was in

contempt regarding disparaging remarks about the Petitioner to the minor children and despite warnings and findings of contempt before this Honorable Court, the respondent has failed to cease from making inappropriate remarks and threats concerning the petitioner.

4. It is apparent that despite a criminal case wherein the respondent pleaded no contest, has had his probation revoked *two times* for violating terms of his probation by harassing and communicating with the petitioner directly as well as through the minor children, the respondent has refused to comply with this Court's orders and directives. There has been no piece of paper entered into the Court file that has prevented the respondent from continuing his threats to petitioner and only harsh sanctions such as a jail term will stop such behaviors.

5. Respondent's willful and contumacious failure to follow the Order has created disruption in the lives of the petitioner and the minor children, and has created intense fear in all parties involved. The respondent has enlisted his oldest minor child, Thomas, in harming the petitioner by giving the child a bottle of orange liquid with specific instructions to the minor child to "...put it in her gas tank on a day that is cold...." so that the petitioner's car would be disabled. The respondent instructed the children on October 30, 2009, to call their mother and tell her that they hated her and that they didn't want to come home and that the weekends were not enough time with dad. The middle child, Savannah, did as instructed by her father and confided later to her mother that her father had instructed her to make that call. The oldest minor child, Thomas, refused to say those things to his mother and the respondent berated the child and was mad at the child the bulk of the weekend. The respondent admonished the two oldest minor

children because they did not do the things that he requested and called them "wimps" because they would not agree to be mean to their mother.   The respondent took time to show the minor children on that October weekend a page on his computer that had pictures of automatic weapons and told the children that he had one and it was stored at a location "about 5 minutes" from his house.

6. Respondent has continued to refuse to have a forensic psychological evaluation performed and should therefore be held in contempt and be ordered to submit immediately to same or face civil and criminal sanctions by this Honorable Court.

**WHEREFORE,** the Petitioner, Mary Varner, prays that the Order entered on June 8, 2009, be enforced by this Honorable Court.

The Petitioner, Mary Varner, further prays that this Court issue a rule to show cause as to why the Respondent should not be found in contempt of this Court and incarcerated in the County Jail until a full forensic psychological evaluation can be performed on the respondent.

Further, the Petitioner, Mary Varner, prays that she be reimbursed for her attorney's fees incurred in the prosecution of this matter, and for such other relief as the Court deems proper in the premises.

Mary Varner,
Petitioner,
By counsel,


Debra V. Chafin
Counsel for Petitioner
314 S. Second Street
Clarksburg, WV   26301
(304)622-0402
WV Bar No. 5854

## VERIFICATION

*STATE OF WEST VIRGINIA,*

*COUNTY OF HARRISON, TO-WIT:*

*Mary Varner*, the petitioner named in the foregoing *Petitioner's Response To The Guardian Ad Litem's Ex Parte Motion And Counter-Petition For Contempt And For Sanctions,* being duly sworn, says that the facts and allegations therein contained are true, except so far as they are therein stated to be on information, and that, so far as they are therein stated to be on information, she believes them to be true.

_____
Mary Varner

Taken, subscribed and sworn to before me this _13th_ day of November, 2009.

My Commission Expires: _October 27, 2019_.

_____
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
AMANDA GOODNIGHT
Rt 3 Box 13 A, Philippi, WV 26416
My Commission Expires October 27, 2019

## CERTIFICATE OF SERVICE

I, Debra V. Chafin, do hereby certify that on the ___ day of November, 2009, served the

foregoing *Petitioner's Response To The Guardian Ad Litem's Ex Parte Motion And*

*Counter-Petition For Contempt And For Sanctions* upon counsel for respondent, Chad Noel at

Post Office Box 822, Morgantown, WV,   26507-0822, and upon Shannon Thomas, Guardian *ad*

*Litem*, via facsimile to 304-269-0371.

Debra V. Chafin
Counsel for Petitioner

IN THE FAMILY COURT OF HARRISON COUNTY, WEST VIRGINIA

IN RE THE MARRIAGE OF MARY VARNER AND JEFFREY VARNER

CIVIL ACTION NO.: 08-D-291

### EX PARTE ORDER

On this day came the Guardian ad Litem, Shannon Thomas, who moved for ex parte relief prohibiting any contact between Jeffrey Varner, the Father, and the minor children of the parties.

The Family Court Judge finds that there is probable cause that the existing conditions will result in immediate and irreparable injury, loss and damage to the infant children before the Respondent or his attorney can be heard in opposition.

Upon consideration of which it is adjudged and ordered that any and all contact between the Respondent, Jeffrey Varner and the minor children of the parties is prohibited, including but not limited to face to face, telephonic, texting, email, through agents or through the school.

It is further ordered that full and complete hearing be held upon Guardian's motion and this order on the _16th_ day of _November_, 2009, at _12:30_ _pm_.

It is further ordered that service of a copy of this order, the Motion for Ex parte Relief and the Petition for Modification upon , COUNSEL FOR Mary Varner and upon COUNSEL FOR Jeffrey Varner shall constitute sufficient notice of the scope and requirements hereof and the Clerk shall send a certified copy of this order and the Motion for Ex Parte Relief to ~~████████████████████~~ THEIR RESPECTIVE ATTORNEYS          CR/fcg

~~█████~~

The Sheriff's Department shall assist in the enforcement of this order.

fi'd TO
atths 11/6



Nov. 9. 2009 3:41PM of Family Court Div.4 Judge Reep 14: 18 2009 MST No. 0994 of P. 7

The Clerk shall send a copy of this order to Shannon R. Thomas, Esquire, P.O. Box 489,

Weston, West Virginia 26452 and Counsel of Record, Petitioner's counsel, Debra V. Chaflin, 314 S Second St., Clarksburg, WV & Respondents counsel, W. Chad Noel, P.O. Box 822, Morgantown, WV 26507-0822.

ENTER: November ___6ᵗʰ___, 2009 at ___2:25___ p.m.

_Cornelia Reep_

FAMILY COURT JUDGE