```
     IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**MYLAN PHARMACEUTICALS, INC.,**

        Plaintiff-
        Counterdefendant,

v.                       //    CIVIL ACTION NO. 1:10CV26
                                (Judge Keeley)

**UNITED STEEL, PAPER AND FORESTRY**
**RUBBER, MANUFACTURING, ENERGY,**
**ALLIED INDUSTRIAL AND SERVICE**
**WORKERS INTERNATIONAL UNION,**
**LOCAL 8-957,**

        Defendant-
        Counterclaimant.

**ORDER GRANTING UNION'S MOTION FOR SUMMARY JUDGMENT
AND REQUEST FOR ATTORNEY'S FEES (DKT. 23) AND
DENYING MYLAN'S MOTION FOR SUMMARY JUDGMENT (DKT. 24)**

Mylan Pharmaceuticals, Inc. ("Mylan") filed this action seeking to vacate an arbitration award in favor of its employee, a member of the defendant Union.[1] The Union counterclaimed seeking enforcement of the award, as well as its attorney's fees in the defense of this case.

The parties agree that no material dispute of fact exists in this action and that the case may properly be resolved on the competing motions for summary judgment. For the reasons stated below, the Court **GRANTS** the Union's motion for summary judgment, as well as its request for attorney's fees.

---

[1]The Union asserts that Mylan failed to name the correct entities as defendants to this case. The Court refers simply to the "Union" for simplicity.

**ORDER GRANTING UNION'S MOTION FOR SUMMARY JUDGMENT**

## I. FACTUAL BACKGROUND

For twelve years, Mylan employed Jeffrey Varner at its manufacturing facility in Morgantown, West Virginia. In 2008, Varner became embroiled in a divorce and custody dispute with his wife, which resulted in a court order limiting his contact with her. Varner violated this order, and a criminal hearing was set for February 4, 2009. Varner requested permission to use a vacation day for what he told Mylan was a "family court hearing." Mylan granted the request, and at the hearing the court imposed a suspended jail sentence, allowing Varner to remain free on probation. Varner's wife filed another complaint, however, and a second criminal hearing was set for April 6, 2009.

Varner then sought short-term disability leave for an alleged injury to his elbow. Mylan's third-party administrator, The Hartford, denied this request. He then sought unpaid leave under the federal Family Medical Leave Act, but that request was also denied.

Finally, Varner again sought short-term disability leave for elective hair restoration surgery. The Hartford granted this request, for a period from March 31 to April 9, 2009. Varner attended the April 6 hearing, at which time the Court imposed a sentence of five days' incarceration, to be served at dates and

times chosen by Varner. Varner underwent hair restoration surgery on April 7. He served two days in jail on April 8 and 9. He filed for an extension of disability leave on April 14, and served his remaining three days of incarceration on April 14, 15 and 16. On April 18, the Hartford approved the extension through April 21.

Shortly thereafter, Mylan learned of Varner's incarceration. It terminated his employment effective May 1, 2009. The Union appealed on his behalf, ultimately taking the case to binding arbitration pursuant to the parties' collective bargaining agreement ("CBA"). The arbitrator concluded that the termination was without just cause, and modified the sanction to a suspension without pay. Refusing to accept that result, Mylan filed this action.

## II. STANDARD OF REVIEW

The courts' review of binding labor arbitration decisions is "not merely limited but very limited," and "among the narrowest known to the law." PPG Indus. v. Int'l Chem. Workers Union, 587 F.3d 648, 652 (4th Cir. 2009)(citations and quotations omitted). This high level of deference applies to all aspects of the arbitrator's decision-making process. "It is well-settled that an arbitrator acting within the scope of a collective bargaining agreement receives great deference as to procedural matters and

legal interpretation." Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co., 232 F.3d 383, 388 (4th Cir. 2000)(citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40 (1987)).

> Our function in this type of case is not to review the substance of the arbitration award or even the rationality of the arbitrator's approach but to determine whether the arbitrator arguably functioned within the scope of the powers given him by the arbitration agreement.

Yuasa, Inc. v. Int'l Union of Elec. Workers, Local 175, 224 F.3d 316, 320 (4th Cir. 2000). Even where the opinion is so ambiguous as to support an inference that the arbitrator may have exceeded his authority, a court should nevertheless abstain from disturbing the award. PPG Indus., 587 F.3d at 652 (citing United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960)).

A court may not overturn an arbitration award based on its conclusion that a factual finding was incorrect, even if such an error was serious. Misco, 484 U.S. at 45. See also id. at 46, (Blackmun, J., concurring)(neither arbitrator's finding that an employee had not committed a particular workplace violation, nor the alternative sanction chosen by the arbitrator, were reviewable by a court). Instead, it must accept the facts found by the arbitrator as true.

Thus, the grounds for vacating an arbitration award are exceedingly narrow, limited to the rare case where the arbitrator "ignore[s] the plain language of the contract," Misco, 484 U.S. at 38, or the award "violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong." Champion Int'l Corp. v. United Paperworkers Int'l Union, 168 F.3d 725, 729 (4th Cir. 1999).

### III. ANALYSIS

Despite Mylan's effort to shoehorn this arbitration into the narrow exemptions noted above, its disagreement essentially is with the aribitrator's procedural decisions and the substance of the award – a challenge to the correctness of the process and decision that is clearly barred. Mylan has no good-faith basis in fact or law for its arguments that the award contravenes the CBA, reflects only the personal prejudices of the arbitrator, or violates any substantial public policy. Accordingly, not only summary judgment for the Union is warranted, but also its request for attorney's fees.

#### A. The Award Draws its Essence from the CBA

Mylan argues that because the arbitrator found Varner did commit some of the violations charged, he was bound to uphold the

termination under a "management rights" provision contained in the CBA, and that the modified sanction of a suspension failed to draw its essence from the parties agreement. Mylan's argument is unavailing for multiple reasons. First, the arbitrator did not accept Mylan's characterization of the alleged violations. Second, he correctly recognized that, even assuming a serious violation, both termination and suspension were available remedies. As this Court has previously held in cases involving Mylan's CBA, the sanctions it imposes are subject to a review for fairness and reasonableness at the arbitration stage. See <u>Mylan Pharms., Inc., v. United Steel Workers Int'l Union, Local 8-957</u>, 548 F.Supp.2d 252 (N.D.W. Va. 2008)("<u>Mylan II</u>"); <u>Mylan Pharms., Inc., v. United Steel Workers Int'l Union, Local 8-957</u>, 471 F.Supp.2d 667 (N.D.W. Va. 2007)("<u>Mylan I</u>").

In his award and opinion in this case (dkt. 23-5), the arbitrator made the following factual findings:

1. Although Varner did state that he was requesting leave on February 4, 2009, for a family court hearing when in fact he faced a criminal charge, the cases were interrelated and the criminal case arose out of the divorce and custody dispute;

2. Mylan offered no evidence showing that Varner posed a danger to his co-workers, the plant's operations, or Mylan's corporate reputation;

3. Varner did not misstate his medical reasons for requesting leave; in fact he did have the surgical procedures he stated as a basis for the request. Further, it was uncontradicted that management had previously told him he could not work following similar operations;

4. Mylan failed to establish a "nexus" between Varner's off-duty conduct and any harm to its operations or reputation; and

5. Mylan's asserted "zero tolerance" policy, allegedly mandating termination of any employee engaging in dishonest behavior or actions harming the company's image, was suspect and selectively enforced.

Based on these facts, the arbitrator concluded that a penalty of termination was not "just" under the circumstances. As this Court has previously stated, such a judgment is within the arbitrator's power given the nature of Mylan's CBA. Mylan II, 548 F.Supp.2d at 261. In Westvaco Corp. v. United Paperworkers International Union, 171 F.3d 971 (4th Cir. 1999), the Fourth Circuit held that, even in the presence of a "management rights" clause very similar to that contained in Mylan's CBA, an arbitrator

7

was empowered to select a less severe disciplinary action (i.e., a suspension) based on the "just cause" provision of the CBA. Id. at 975 (citing Misco, 484 U.S. at 41 ("an arbitrator is authorized to disagree with the sanction imposed for employee misconduct")). Therefore, even if the arbitrator in this case believed all of Mylan's contentions, he was empowered under the CBA to reduce the penalty to a suspension. This contrasts with the contractual provisions at issue in Mountaineer Gas Co. v. Oil Workers International Union, 76 F.3d 606 (4th Cir. 1996), where the employer's drug abuse policy provided that any employee testing positive for illegal drugs "will be promptly discharged." Id. at 609. Despite this, an arbitrator held that a positive drug test did not rise to the level of "just cause" for termination. The Fourth Circuit, however, held that vacation of that award was proper because the arbitrator had ignored the plain language of a policy that provided for no discretion or alternative sanction.

No such unequivocal statement of termination as an automatic sanction, for any violation, is present in this case. See Mylan II, 548 F.Supp.2d at 262 (distinguishing Mylan's CBA from Mountaineer Gas). Instead, even the most serious violations carry a punishment of either suspension or termination. Id. Mylan's asserted "zero tolerance" policy appears nowhere in the CBA in or any document

8

incorporated into that agreement by reference. In combination with the "just cause" provision, this flexibility empowered the arbitrator to select the consequence he chose.

**B. The Award is not Merely Based on the Arbitrator's Personal Views**

Having found that the arbitrator's decision has a substantial basis in the terms of the CBA and the facts as he found them, the Court cannot conclude that the award "reflects merely the arbitrator's personal notions of right and wrong." Champion, 168 F.3d at 729 (emphasis added). That the arbitrator's personal judgment may have "tainted" his decision, as Mylan argues, is wholly insufficient to overturn the award and would open any such arbitration to attack.

Mylan seizes on one paragraph of the arbitrator's opinion, in which he expressed skepticism about the company's asserted "zero tolerance" policy for dishonest behavior or acts reflecting poorly on Mylan (see also Section III-D, infra). As a basis, the arbitrator referred to other incidents and allegations of misconduct at Mylan's facilities for which other employees were presumably not fired. This was not, then, a conclusion like that of the arbitrator in Mountaineer Gas, declining to enforce an unambiguous policy. Instead, it was the arbitrator's judgment that Mylan's asserted policy was not, in fact, its customary practice.

9

Such a judgment is well within the scope of the arbitrator's powers to interpret the CBA and make factual findings.

### C. The Award Does Not Violate Public Policy

Mylan has failed to produce any evidence that reinstatement of Varner would violate a clearly established public policy.[2] It provided no facts tending to show that he poses a danger to the operation of its facilities, that he is likely to engage in violent conduct at work, or that his actions affected Mylan's corporate reputation.

Furthermore, Mylan is estopped from arguing on this ground because in its termination and subsequent explanations, it raised no evidence regarding Varner's supposed danger to Mylan, its employees, or corporate reputation. Instead, it relied on assertions of dishonesty and immoral off-duty conduct. To infer from Varner's criminal conduct that he was a threat to workplace safety (or Mylan's reputation) would violate Misco's admonition to respect the fact-finding role of the arbitrator. 484 U.S. at 44.

---

[2]The Court assumes, without deciding, that the concept of "workplace safety" is a clearly established public policy, although Mylan did not precisely define the source of the policy interest it seeks to protect. See Misco, 484 U.S. at 44 (public policy must be based on "laws and legal precedents and not from general considerations of supposed public interests")(citations and quotations omitted).

### D. The Award is Not Void for Procedural Unfairness

Mylan strenuously argues that the arbitrator denied it "due process" by accepting into evidence allegedly irrelevant, unfounded media accounts of investigations regarding its quality control measures, by refusing to permit a response to those allegations, and by denying its motion to reopen the case and accept new evidence after the arbitrator made his award. Even if these complaints had any merit on substantive grounds, they are far beyond the reach of the Court on review of an arbitration award.

Mylan identifies no provision of the CBA setting forth rules of evidence or procedure the arbitrator in this case supposedly violated. The company was provided with the opportunity to call and cross-examine witnesses in a five-hour arbitration hearing, and to supplement the record with a post-hearing brief. The arbitrator's alleged refusal to consider more evidence was within his discretion.

Finally, Mylan's motion to reopen the record was quite properly denied by the arbitrator. The award was entered on November 18, 2009. The next day, Mylan filed its motion, which recounted further developments in Varner's court cases. These events took place well after the termination in question and thus were irrelevant to the arbitrator's decision. See Misco, 484 U.S.

at 39-40 (common arbitral practice to limit record to evidence available to employer at time of discharge). If Mylan believed that Varner's subsequent off-duty behavior justified further sanction, the arbitration at issue in this case did not "forever foreclose the Company from using that evidence as the basis for a discharge." Id. at 40.

### E. The Union is Entitled to an Award of Attorney's Fees

The Court has set forth the standard for an award of attorney's fees in arbitration challenges in prior litigation between the parties, and expressed its reluctance to make such an award. Mylan II, 548 F.Supp.2d at 263-65. In that case, the Court held that Mylan's challenge to the award focused on whether the arbitration decision drew its essence from the CBA and violated public policy. Thus, under United Food Workers, Local 400 v. Marval Poultry Co., 876 F.2d 346 (4th Cir. 1989), an award of attorney's fees was inappropriate unless the complaint had no "arguable basis in law." On the other hand, a challenge to the merits of an award is "presumptively unjustified." Marval Poultry, 876 F.2d at 351.

In this case, Mylan predictably couches its complaint in the language of the case law allowing for narrow exceptions to the finality of arbitration awards. Its substantive arguments, however, directly attack the arbitrator's procedural decisions and his

12

ultimate award. Even if the Court takes Mylan's allegations on their face and construes them as challenges to whether the award "draws its essence" from the CBA, no arguable basis in law exists for those arguments. As explained in this Order, Mylan's contention that the arbitrator lacked the authority to choose a less severe sanction is conclusively precluded by both the prior rulings of this Court, in litigation Mylan itself initiated and lost, and the precedent of the Fourth Circuit and the Supreme Court. It failed to identify any procedural error in violation of the CBA that would even arguably justify vacation of the award. Finally, it offered no evidence, at the arbitration or before the Court, that enforcement of the award would actually endanger any specific public policy interest.

Accordingly, the Court concludes that Mylan brought this action "without justification, refus[ing] to abide by the award of an arbitrator." Marval Poultry, 876 F.3d at 350 (quotations omitted). Thus "the courts' equitable powers should be exercised and fees should be awarded." Id.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Union's motion for summary judgment and for attorney's fees (dkt. 23), and **DENIES** Mylan's motion for summary judgment (dkt. 24). The Court

**MYLAN PHARMS. v. USW LOCAL 8-957**                                    **1:10CV26**

**ORDER GRANTING UNION'S MOTION FOR SUMMARY JUDGMENT**

**HOLDS** the award of the arbitrator valid and enforceable. Furthermore, the Court **AWARDS** the Union its reasonable attorney's fees in this matter. The Union shall file a statement setting forth the fees and expenses to which it contends it is entitled, along with any supporting memoranda or exhibits, by **April 29, 2011.** Mylan shall file any objections by **May 30, 2011.** No further reply or response shall be filed unless otherwise ordered.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: March 25, 2011.

>                                /s/ Irene M. Keeley
>                                IRENE M. KEELEY
>                                UNITED STATES DISTRICT JUDGE